## MYERS v. KNICKERBOCKER TRUST CO.

### (Circuit Court of Appeals, Third Circuit.  June 19, 1905.)

#### No. 29.

1. CORPORATIONS—BANKING COMPANIES—STOCKHOLDERS—LIABILITY TO CREDITORS—STATUTES—NATURE AND EFFECT.

   The liability of stockholders to creditors of a banking association under Acts Gen. Assem. Md. 1892, p. 156, c. 109, § 85*l*, declaring that each stockholder shall be liable to depositors and creditors for double the amount of stock at par held by such stockholder, though statutory, was contractual in its nature; each stockholder voluntarily agreeing to incur the liability at the time he became such, which liability was not a corporate asset, but a debt due directly by the stockholder to creditors of the corporation who became such while the stockholder held its stock.

2. SAME—STATUTES—CONSTITUTIONALITY—OBLIGATION OF CONTRACT—IMPAIRMENT.

   Acts Gen. Assem. Md. March 25, 1904, p. 179, c. 101, repealing the pre-existing remedy of a creditor to bring a separate action at law to enforce a several statutory liability against a stockholder of a banking association for corporate debts to the extent of an amount equal to the par value of the stock held by him, conferred by Acts Gen. Assem. Md. 1892, p. 156, c. 109, § 85*l*, and substituting therefor a remedy by bill in equity on behalf of all creditors against all stockholders in the state, and declaring that such statutory liability shall constitute an asset of the corporation if necessary to pay debts, etc., not only changed the remedy, but abrogated the contract right conferred by such former statute, and was therefore unconstitutional, as impairing the obligation of contract, as against creditors of a corporation who became such and had brought suit to enforce such statutory liability prior to the passage of the act.

In Error to the Circuit Court of the United States for the Middle District of Pennsylvania.

See 133 Fed. 764.

J. H. McNeal, for plaintiff in error.

W. Calvin Chestnut, for defendant in error.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

GRAY, Circuit Judge.  The defendant in error, a corporation of the state of New York, (hereinafter called the plaintiff) brought suit against the plaintiff in error (hereinafter called the defendant), upon his statutory liability as a holder of 200 shares of the capital stock of the City Trust & Banking Company, an insolvent corporation of the state of Maryland, of which the plaintiff was a creditor to the extent of $65,000.

The suit, which was an action at law, was instituted on March 21, 1904, in the Circuit Court of the United States for the Middle District of Pennsylvania, and came on to be tried on June 13, 1904. The alleged liability was based upon an act of the General Assembly of Maryland, of 1892, p. 156, c. 109, § 85*l* of which enacts that "each stockholder shall be liable to depositors and creditors of any such corporation, for double the amount of stock at the par value held by such stockholder in such corporation."  The charter of the said City Trust & Banking Company, by an express provision thereof,

was made subject to this provision of the statute. It is a proposition of general law, and not here disputed, that, to quote the language of the learned judge of the court below, "the liability so imposed is absolute, direct and several, and any stockholder may be pursued by action at the instance of a creditor, and judgment recovered to the full extent fixed by the statute, so far as it is necessary to satisfy his claim, provided the stockholder has not already paid other corporate debts, for which, so far as he has, he is entitled to credit pro tanto." Nor is it denied that this is the law of Maryland, as evidenced by numerous decisions of its court of last resort. The relation between a creditor of a corporation and a stockholder therein who has become such, subject to the statutory liability thus imposed, is a contractual one, and the obligation arising therefrom may be enforced by any appropriate remedy at law or in equity. The right of action is transitory, and may be pursued in a court of competent jurisdiction in any state where such stockholder may be found.

Such being the state of the law when suit in the present case was instituted, the General Assembly of the state of Maryland, by the act of March 25, 1904, p. 179, c. 101, repealed section 85*l* of the act of 1892, as above quoted, and re-enacted the same so as to read as follows:

"85*l*. The stockholders of every such corporation shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts and engagements of every such corporation to the extent of the amount of their stock therein at the par value thereof, in addition to the amount invested in such stock. Persons having stock entered on the books of the corporation in their names as executor, administrator, guardian, trustee or pledgee, shall not be personally subject to any liability on such stockholders, but the persons pledging the stock and the estate and funds in the hands of such executor, administrator, guardian or trustee, shall be subject to the liability imposed upon the holders of said shares. And the liability of such stockholders shall be an asset of the corporation for the benefit ratably of all the depositors and creditors of any such corporation, if necessary, to pay the debts of such corporation, and shall be enforceable only by appropriate proceedings by a receiver, assignee or trustee of such corporation, acting under the orders of a court of competent jurisdiction; provided that this act shall not affect the rights or remedies of any creditor or depositor under the existing laws of this state against the stockholders of any such corporation, who were liable to any such creditor or depositor at the date of the passage of this act."

It will be observed that this act, by its express terms, was not retrospective, by reason of the proviso at the close of this section 85*l*, as re-enacted. Eighteen days thereafter, however, to wit, April 12, 1904, an act of the said General Assembly was approved (being chapter 337, p. 597, of the Acts of 1904), by which it was provided that:

"The exclusive remedy for the enforcement against stockholders of all rights existing under the Code of Public General Laws, article 23, section 85*l*, as said section stood before the repeal thereof by the act of March 25th, 1904," and the re-enactment of the same, with amendments, and which rights "were declared by said act not to be affected by the terms thereof, shall be as against stockholders residing in the state of Maryland, by bill in equity in the nature of a creditors' bill filed against such stockholders by one or more creditors on behalf of themselves and all other creditors of the

corporation who may come in and make themselves parties thereto, in a court having jurisdiction within the limits of the county or the city of Baltimore in which, as the case may be, the principal office of the corporation is situated at the time of the filing of the bill, or, in case any such corporation has, by reason of having been placed in the hands of a receiver, or from any other cause, ceased to have any principal office at the time of the filing of the bill, then the bill shall be filed in a court having jurisdiction within the limits of the county or the city of Baltimore, in which, as the case may be, the said corporation had its last and principal place of business; and to any such bill, stockholders residing beyond the limits of the state of Maryland may become parties defendant, and upon so becoming parties, shall not be proceeded against in any other state or territory or in the District of Columbia in respect of any liability imposed by the said section 85*l* as said section stood before the repeal thereof and which existed at the time of the passage of the act of 1904 hereinbefore referred to. This section shall become operative as of January first, nineteen hundred and three, and shall cause the abatement of all actions at law which shall have been brought against said stockholders since that date to enforce any liability created by section 85*l* as said section stood before the repeal thereof, and which existed at the time of the passage of the act of 1904 hereinbefore referred to: provided, however, that as to any plaintiff or plaintiffs in any of said abated suits who shall, within sixty days from the passage of this act, become a party or parties to a bill in, equity of the character mentioned in this section, then as regards the operation of the statute of limitations upon the claims so sued on, the time elapsed between the institution of said abated suits and the time of such plaintiff or plaintiffs becoming a party ·or parties to said bill in equity, shall be excluded in ascertaining the period within which suits are required to be brought by the said statute of limitations. The costs taxable to any plaintiff or plaintiffs in any action at law which shall be abated under the provisions of this section the plaintiff or plaintiffs in which action shall become a party or ·parties to a bill in equity under the provisions of this section, shall become a part of the costs taxable in the proceedings in said equity case."

The court below permitted this act to be given in evidence by the defendant, under the plea of non assumpsit, as also the fact that on June 9, 1904, four days before this case was called for trial, the defendant had become a party defendant to a bill in equity in Baltimore City, under the provisions of said act. At the conclusion of the case, the defendant, in several prayers, asked the court to withdraw the case from the jury, and rule that the plaintiff must be nonsuited, on account of the passage of this act and the fact that he had become a party to the equity suit pursuant to its provision in that behalf. The court, however, declined to do so, and directed a verdict for the plaintiff, subject to two points of law which were reserved, with the first of which only we are here concerned, to wit, "whether there was any evidence on which plaintiff was entitled to· recover, with leave to enter judgment in favor of the defendant,. notwithstanding the verdict, if the court should be of the opinion that upon the law judgment should be so entered." The rule for judgment non obstante veredicto on the points reserved, was afterwards discharged and judgment entered upon the verdict. There are several assignments of error, but by stipulation of counsel, the only question for our determination is the constitutionality of chapter 337, p. 597, of the Acts of 1904.

It is to be observed that this act is entirely retrospective. It applies necessarily by its terms only to the rights of creditors against

stockholders, as they existed under article 23, section 85*l* of the law of 1892, at the time of its repeal, which were declared by said repealing act not to be affected by the terms thereof. It is contended by the plaintiff, and so held by the court below, that this act impaired the obligation of the contract between it and the defendant, as it existed at the time of its passage (April 12, 1904), and at the time of the institution of this suit for the enforcement of the same on March 13, 1904.

The liability of each stockholder to any creditor of the corporation, for double the amount of the par value of his stock, under the act of 1892, was statutory, but it was, as we have said, contractual in its nature, each stockholder voluntarily agreeing to incur the liability at the time of his becoming such. The creditor was authorized to sue and collect from any stockholder to the extent of such liability, without first exhausting his remedies against the corporation, the liability of the stockholder to the creditor being a primary obligation. The nature of the liability under the act of 1892, which we are now considering, is thus authoritatively stated by the court of appeals of Maryland, in the very recent case of Miners' & Merchants' Bank of Lonaconing v. Snyder (Md.) 59 Atl. 707, hereinafter referred to:

"The act of 1892, p. 153, c. 109, which was then in force created the liability of the stockholders of a trust company for its debts. That particular act has not heretofore been the subject of consideration by us, but we have several times had occasion to construe provisions of the Code and special charters imposing a liability of the like nature upon stockholders in manufacturing and other corporations. In those cases we determined that such liability does not constitute a corporate asset enforceable by a receiver of the corporation, but it is a debt due directly by the stockholder to those persons who became creditors of the corporation while he held its stock. We further held that any such creditor could enforce the liability by a separate action against any stockholder from whom it was due, and recover the debt from him to the extent of double the par value of the stock held by him at the time it was contracted. It was thus made possible for the creditor by the exercise of superior skill and diligence to secure payment in full of his debt from the stockholder sued by him to the exclusion of the other creditors. Matthews v. Albert, 24 Md. 535; Norris v. Wrenschall, 34 Md. 501; Hammond v. Straus, 53 Md. 10; Attrill v. Huntington, 70 Md. 197, 16 Atl. 651, 2 L. R. A. 779, 14 Am. St. Rep. 344; Colton v. Mayer, 90 Md. 717, 45 Atl. 874, 47 L. R. A. 617, 78 Am. St. Rep. 456, and cases there cited."

Accepting this interpretation of the Maryland act of 1892, by the court of last resort of that state, we are relieved from the necessity of independent interpretation on our part. It was to enforce the debt thus directly due from the stockholder to the creditor, the corporation plaintiff, that the suit below was instituted. The contention of the defendant below was, and is here, that though the payment of this debt was admittedly enforceable by the suit as instituted, prior to the enactment of the statute of April 12, 1904, it was no longer so, after the enactment of the same, and that the suit, by force of this statute, must abate. It is clear that such was the intended operation of this statute.

Whether the passage of such a law is within the competence of the state Legislature, is the single question now before us. The force and effect of the provision of section 10 of article 1 of the Con-

stitution of the United States, providing that no state shall pass any law impairing the obligation of contracts, has been considered by the Supreme Court of the United States in cases far too numerous for exhaustive citation.

In the earliest case in which the contract clause of the Constitution came up for direct and extensive discussion (Sturges v. Crowninshield, 4 Wheat. 122, 197, 4 L. Ed. 529), Chief Justice Marshall's definition of the words "obligation of a contract," as used in this clause of the Constitution, is, perhaps, as satisfactory as any since formulated. He says:

"In discussing the question, whether a state is prohibited in passing such a law as this [an insolvent law], our first inquiry is into the meaning of words in common use—what is the obligation of a contract? and what will impair it? It would seem difficult to substitute words which are more intelligible, or less liable to misconstruction, than those which are to be explained. A contract is an agreement in which a party undertakes to do or not to do a particular thing. The law binds him to perform his undertaking, and this is, of course, the obligation of his contract."

Distinction was early made between those acts of the state Legislature which merely affected or modified the remedy upon a contract, without destroying the same, and those which affected its substantial obligation. In applying this distinction, however, the decisions of the Supreme Court show increasing care, to protect the substantial obligation of a contract from impairment by subsequent legislation which changes or modifies the remedy for its enforcement.

Chief Justice Taney, delivering the opinion of the Supreme Court in Bronson v. Kinzie, 1 How. 311, 317, 11 L. Ed. 143, says:

"It is difficult, perhaps, to draw a line that would be applicable in all cases between legitimate alterations of the remedy and provisions which, in the form of remedy, impair the right. But it is manifest that the obligation of the contract, and the rights of a party under it, may, in effect, be destroyed by denying a remedy altogether; or may be seriously impaired by burdening the proceedings with new conditions and restrictions, so as to make the remedy hardly worth pursuing."

In McCracken v. Hayward, 2 How. 608, 611, 11 L. Ed. 397, the Supreme Court says:

"The obligation of a contract consists in its binding force on the party who makes it. This depends on the laws in existence when it is made; these are necessarily referred to in all contracts, and forming a part of them as the measure of the obligation to perform them by the one party, and the right acquired by the other. * * * If any subsequent law affect to diminish the duty, or to impair the right, it necessarily bears on the obligation of the contract in favor of one party, to the injury of the other; hence, any law, which in its operation amounts to a denial or obstruction of the rights accruing by a contract, though professing to act only on the remedy, is directly obnoxious to the prohibition of the Constitution."

In Seibert v. Lewis, 122 U. S. 284, 294, 7 Sup. Ct. 1190, 1194, 30 L. Ed. 1161, the Supreme Court, speaking by Mr. Justice Matthews, says:

"It is well settled by the decisions of this court, that 'the remedy subsisting in a state, when and where the contract is made and is to be performed, is a part of its obligation, and any subsequent law of the state which so affects that remedy as substantially to impair and lessen the value of the contract

is forbidden by the Constitution, and is therefore void.' Edwards v. Kearzey, 96 U. S. 595, 607, 24 L. Ed. 793. It had been previously said upon a review of the decisions of the court, in Von Hoffman v. City of Quincy, 4 Wall. 535, 553, 18 L. Ed. 403: 'It is competent for the states to change the form of the remedy, or to modify it otherwise as they may see fit, provided no substantial right secured by the contract is thereby impaired. No attempt has been made to fix definitely the line between alterations of the remedy which are to be deemed legitimate and those which, under the form of modifying the remedy, impair substantial rights. Every case must be determined upon its own circumstances. Whenever the result last mentioned is produced the act is within the prohibition of the Constitution, and to that extent void.' * * * In Louisiana v. New Orleans, 102 U. S. 203, 206, 26 L. Ed. 132, Mr. Justice Field, in the opinion of the court, said: 'The obligation of a contract, in the constitutional sense, is the means provided by law by which it can be enforced—by which parties can be obliged to perform it. Whatever legislation lessens the efficacy of these means impairs the obligation. If it tend to postpone or retard the enforcement of the contract, the obligation of the latter is to that extent weakened.' In various forms, but with the same meaning, this rule has been often repeated in subsequent decisions by this court."

In Bryan v. Virginia, 135 U. S. 685, 693, 10 Sup. Ct. 972, 982, 34 L. Ed. 304, the Supreme Court, speaking by Mr. Justice Bradley, says:

"It is well settled by the adjudications of this court, that the obligation of a contract is impaired in the sense of the Constitution, by any act which prevents its enforcement, or which materially abridges the remedy for enforcing it, which existed at the time it was contracted, and does not supply an alternative remedy equally adequate and efficacious."

Let us consider, then, how the act of April 12, 1904, if given the effect claimed for it, operates upon the law of the contract, as it existed at the time it was passed. We have already seen that the right of the plaintiff, as a creditor of the corporation when this suit was instituted, was to demand from the defendant, as a stockholder, payment of or upon his debt, up to the amount of double the par value of defendant's stock; that by the exercise of diligence, this right might become, and in this case actually did become, exclusive of that of every other creditor as to this particular defendant, and that the right was enforceable in a common-law suit, such as was being proceeded with in the Circuit Court of the United States for the Middle District of Pennsylvania, at the time of the passage of the said act of April 12, 1904. But by this latter act, it was provided that the exclusive remedy for the enforcement against stockholders of such rights as existed under the act of 1892, and which were saved by the repealing and re-enacting act of March 25, 1904, should be by a bill in equity against stockholders residing in the state of Maryland, by one or more creditors, on behalf of themselves and all other creditors of the corporation who should come in and make themselves parties thereto in a state court having jurisdiction within the limits of the city of Baltimore, and that to any such bill, stockholders residing beyond the limits of Maryland might become parties defendant, and upon so becoming should not be proceeded against in any other state or territory in respect of any liability imposed by said section 85l (being the law of 1892). This is indeed a change of remedy, but one so drastic that it operates directly upon

the contract and clearly impairs its obligation. Before the passage of the act, the contract which the plaintiff was properly seeking to enforce, was one, by which the stockholder had incurred an obligation to the plaintiff to respond to his demand, in a suit prosecuted with the requisite diligence, in a sum twice the amount of the par value of his stock. The remedy to enforce this right, and which was being pursued by the plaintiff at the time of the passage of the obnoxious law, was the one decided to be appropriate by the court of last resort in the state of Maryland. It was something more, then, than a mere change of remedy, to say that the right thus described and defined as existing under the law of Maryland of 1892, as interpreted by the highest courts of that state, no longer existed, but that this liability of the individual stockholder to the individual creditor, should be changed into a right vested in all the creditors, to proceed in one action against all the stockholders. As said by Judge Lowell, in Dexter v. Edmonds (C. C.) 89 Fed. 467, "It is a difference between two substantive rights." It is not a question of an alternative and equally efficacious remedy for the enforcement of a right, but a change in the essential nature of the right itself, and a clear impairment of the obligation of the contract out of which such right arose. The Maryland statute of 1892 gives this plaintiff, as an individual, a substantive right as against this individual defendant. The law of April 12, 1904, says that this substantive right can no longer be enforced. We have no difficulty, therefore, in deciding that this act of the Legislature of Maryland, of April 12, 1904, entirely retrospective in its operation as it is, is void as being within the inhibition of article 1, cl. 10, of the Constitution, declaring that no state shall pass a law impairing the obligation of contracts.

With the policy of this later law, we are not here concerned. It may well be, that it is wiser and more equitable to make this stockholders' liability an asset of the corporation, and either to allow a receiver to collect from all stockholders, and account pro rata to all creditors, or to accomplish the same result by a creditors' bill, in which all creditors may be parties and all stockholders defendants. But the law of the contract was not of this character at the time the liability of the defendant to the plaintiff accrued. The only question before us is, whether the law of 1904 works an impairment of the contract existing between plaintiff and defendant at the date of its passage. Our attention has been called to the case of Miners' & Merchants' Bank of Lonaconing v. Snyder (Md., decided November 30, 1904, not yet officially reported) 59 Atl. 707, and above quoted from. In that case, the Court of Appeals of the state of Maryland had before it the very questions here presented, as to the effect of the law of 1904 upon the rights of creditors of an insolvent corporation as they existed under the law of 1892, and have come to an opposite conclusion to that which we have just stated as our own in the case before us. They held that this act does not impair the obligation of a contract, as the Legislature had the power to alter and modify the remedy to enforce the contract, without impairing its obligation. We have read the opinion and judgment of the

court in this case, with the interest and respect due to its high character, and with the deference to which it is entitled as the court of last resort in the state whose legislation is now under review. We are, however, compelled to adhere to the views we have expressed, and regret that they should be in opposition to those of that learned tribunal.

The judgment of the court below must therefore be affirmed.